UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILBUR C. DEGROAT, III, ARLITTA DEGROAT, LEON DEGROAT, DIANE DEGROAT, PIA DEGROAT DENNISON, MARIE DEGROAT MANN, RODNEY VAN DUNK, EUNICE DEGROAT, GILBERT DEGROAT,, ROSEMARIE MANN, AMANDA MANN, DAWN MANN, SANTANA PETERSON, JAZMINE PETERSON, RACHAEL MANN, DANIEL W. DENNISON, JR and JON VAN DUNK,<br>          Plaintiffs,<br><br>v<br>SCOTT COOPER; BRAD INGLESBY; RELATIVITY MEDIA, LLC a California limited liability company; APPIAN WAY, LLC, a California limited liability company; ENERGY ENTERTAINMENT, INC., a California corporation;  SCOTT FREE PRODUCTIONS, INC.,  a California corporation; RED GRANITE PICTURES, INC. a California corporation; and JOHN DOES 1 to 5,<br>          Defendants | Case  NO.:<br><br>Civil Action<br><br><br>*COMPLAINT*<br><br>and<br><br>*JURY DEMAND* |

Plaintiffs, complaining of the Defendants, say:

PARTIES and JURISDICTION

1.Plaintiff Rodney Van Dunk is a resident and citizen of the State of New York and resides at 26 Boulders Avenue, Hillburn.

2.Plaintiff Eunice DeGroat is a resident and citizen of the State of New Jersey and resides at 100 Strysko Avenue, Mahwah .

3.Plaintiff Diane DeGroat is a resident and citizen of the State of New York and resides at 47B Marc Lane, Wurtsboro..

4.Plaintiff Gilbert DeGroat is a resident and citizen of the State of New Jersey and resides at 116 Warhol Avenue, Mahwah.

5.	Plaintiffs Daniel W. Dennison, Jr and Pia DeGroat Dennison are residents and citizens of the State of New York and reside at 2359 Route 209, Wurtsboro.

6.	Plaintiff Rosemarie Mann is a resident and citizen of the State of New York and resides at 544-E Main Street, Apt. 70, Middletown.

7.	Plaintiff Amanda Mann is a resident and citizen of the State of New Jersey and resides at 128 Grove Street, Mahwah.

8.	Plaintiffs Wilbur C. DeGroat, III and Arlitta DeGroat are residents and citizens of the State of New Jersey and reside at 33 Elm Street, Hewitt.

9.	Plaintiff    is a resident and citizen of the State of New Jersey and resides at 33 Elm Street, Hewitt.

10.	Plaintiff Dawn Mann is a resident and citizen of the State of New Jersey and resides at 62 Dewitt Avenue, FL 2, Belleville.

11.	Plaintiff Santana Peterson is a resident and citizen of the State of New Jersey and resides at 10 Spruce Road, Mahwah.

12.	Plaintiff Marie DeGroat Mann is a resident and citizen of the State of New Jersey and resides at 1190 Sycamore Lane, Mahwah.

13.	Plaintiff Jazmine Peterson is a resident and citizen of the State of New Jersey and resides at 10 Spruce Street, Mahwah.

14.	Plaintiffs Rachael Mann and Jon Van Dunk are residents and citizens of the State of New York and reside at 49 Oxford Lane, Harriman.

15.	Plaintiff Leon DeGroat is a resident and citizen of the State of Tennessee, and resides at 466 Sweetheart Way, Sevierville.

16.	Defendant Scott Cooper is, on information and belief, a resident and citizen of the State of California.

17.	Defendant Brad Inglesby is, on information and belief, a resident and citizen of the State of California

18.	Defendant Relativity Media, LLC is, on information and belief, a resident and citizen of the State of California

19. Defendant Appian Way. LLC.is, on information and belief, a resident and citizen of the State of California.

20. Defendant Energy Entertainment is, on information and belief, a resident and citizen of the State of California.

21. Defendant Scott Free Productions, Inc., is, on information and belief, a resident and citizen of the State of California.

22. Defendant Red Granite Pictures, Inc., is, on information and belief, a resident and citizen of the State of California.

23. Defendants John Does 1 to 5 are, on information and belief, individuals who are residents and citizens of the State of California.

24. There is complete diversity between the Plaintiffs and the Defendants.

25. The amount in controversy is in excess of $150,000.00

26. This Court has jurisdiction pursuant to 28 USC 1332 as there is diversity of citizenship, the Plaintiffs are residents and citizens of the States and Districts of New Jersey, New York and Tennessee, and all of the Defendants are residents of the State of California and the amount in controversey exceeds $150,000.00.

27. This action is properly venued in New Jersey as some of the harm caused by the Defendants was suffered here, by New Jersey residents; and a substantial part of the events are depicted as occurring here.

**FACTUAL ALLEGATIONS**

28. All of the Plaintiffs are members of the Ramapough Lunaape Nation, a Native American ethnic group recognized as a tribe by the States of New Jersey and New York.

29. Many, but by no means all, of the people of the Ramapough Lunaape Nation live in the communities of Hillburn, New York; the Stag Hill neighborhood in Mahwah, New Jersey (adjacent to Hillburn across the state line that runs through the Ramapo Mountains there) and the Peters Mine area of Ringwood, New Jersey (adjacent to both Stag Hill and Hillburn over the Ramapo Mountains).

30. Historically, the Ramapough Lunaape people were referred to locally as "Jackson

Whites", a derogatory term with various origins ascribed to it, none of them complimentary.

31.     The people of the Ramapough Lunaape Nation have historically been widely discriminated against in educational opportunity, employment and other matters, and are widely regarded as "inbred" among their surrounding populations and communities. Among other discrimination, they were forced to attend segregated schools in Mahwah, New Jersey until the 1930s and the Hillburn school was only integrated in the 1940s when Thurgood Marsahll, acting for the NAACP, filed an action challenging that segregation.

32.     The people of the Ramapough Nation have been depicted in sensationalist popular literature, such as "Weird New Jersey"and "Roadside America", as well as in mainstream media, as dangerous and violent with 'outsiders', although there is no factual basis for this myth.

33.     DeGroat and Van Dunk are well known common surnames among the Ramapough Lunaape Nation, and have been for two hundred years or so.

34.     Defendants collectively created, produced and distributed a movie, Out of the Furnace ("the Furnace movie"), released on or about December 6, 2013.

35.     The Furnace movie revolves around the efforts of its protagonist, portrayed by Christian Bale, to keep his younger brother on a straight path; but the young man becomes involved in an underground bare-knuckle fight ring leading to his murder by a violent and evil character, Harlan De Groat, who is the chief of a gang of "inbreds" living in the Ramapo Mountains in New Jersey. Harlan DeGroat, portrayed by Woody Harrelson, is the head of a criminal gang that is identified as the Jackson Whites; which gang is described as a community of "inbreds" that inhabits the Ramapo Mountains in New Jersey. Another gang member is identified as Dwight Van Dunk. The community is depicted as lawless, drug-addicted, impoverished and violent; and the members appear to be of some sort of racially mixed heritage. After his brother disappears, the movie follows the protagonist's efforts to identify and locate the killer as he is increasingly frustrated by the lack of action by the police.

36.     The character portrayed by Willem DaFoe tells the protagonist that Harlan DeGroat and his companion, who have just menaced DaFoe, are "inbred mountain folk from Jersey".

He later tells him "You don't want to set foot in those mountains" and refers to DeGroat and his gang as "these inbreds".

37. Asking DaFoe for better fighting opportunities, the protagonist's brother says "up in the Ramapos they got fights". He later says "get me that fight up in Ramapo".

38. The local chief of police, portrayed by Forrest Whitaker, tells the protagonist that he has spoken to the "Bergen County....Jersey State.. Fish & Game", that "the people up in those hills", that its "whole nother world up there" with their "own breed of justice". He tells him that "generations upon generations of these people never come down from that mountain".

39. It is common knowledge that the "Rampaoughs" live in the Ramapo Mountains in New Jersey.

40. In a scene of the movie, a police officer wearing the uniform of a Bergen County Police Officer, and driving a patrol car readily recognizable as a Bergen County Police patrol car, approaches the 'hero', who is trying to infiltrate the "Jackson Whites" up in the "Ramapo Mountains of New Jersey" and warns him to leave the area before they have to take him out in a body bag.

41. The Jackson Whites are depicted as traveling about on ATVs, a common and well known means of transportation by Ramapoughs when traveling through the Ramapo Mountains both for recreation and to get one from community to another.

42. Harlan DeGroat and his gang of Jackson Whites are easily recognizable, at least to the residents of the New Jersey/New York border communities, and to the friends and business associates of Plaintiffs, as Ramapoughs; and Plaintiffs are easily recognized as members of this violent, criminal Jackson White group.

43. The movie puts Plaintiffs, and their family members, in a false light, and has caused them shame, embarrassment and humiliation. Their children have suffered teasing and harassment in school as a result of this.

44. When the Plaintiffs, and each of them, viewed the movie they felt embarrassed and humiliated by its false representations about the people who lived in the Ramapo Mountains, about the false representations it made about people now or formerly known as Jackson

Whites, and about the DeGroat and Van Dunk families.

45. Any reasonable person would be highly offended by the false light in which the movie placed the people who live in the Ramapo Mountains of New Jersey.

46. Any reasonable person would be offended by the false light in which the movie placed the people who are now, or were formerly, known as Jackson Whites.

47. Any reasonable person would be offended by the false light in which the movie placed the people who have the family name of DeGroat and Van Dunk and who are known to live in the Ramapo Mountains and/or be part of the group now or formerly known as Jackson Whites.

48. The Defendants, and each of them, knew or should have known that their actions would place Plaintiffs, and/or any person so situated in a false light. The connection between the ethnic slur of "Jackson Whites", with the location of the Ramapo Mountains of New Jersey", with a Bergen County Police patrol car, with the surnames "DeGroat" and "Van Dunk", is too specific to the Ramapough plaintiffs to be chance, coincidence or happenstance, and implies an element of knowledge on the part of the Defendants, or some of them.

49. Defendants Cooper and Inglesby are credited as the writers of the movie. The other Defendants Relativity Media, Appian Way, Energy Entertainment, Red Granite Pictures and Scott Free Productions are all identified as producers of the movie. John Does 1 to 5 are individuals, as yet unknown and unidentified, who contributed to the depiction of Harlan DeGroat and the Jackson Whites.

50. Defendant Cooper has said, in a DP/30 interview aired on or about December 4, 2013, and which remains readily available on YouTube, that the character of Harlan DeGroat is based upon someone "who has been in my family's life".

51. Defendant Cooper further said that he had had Woody Harrelson, who portrays Harlan DeGroat, do research "about people in that area of the country" and "watch some documentaries".

## FIRST COUNT

52. Defendants put the Plaintiffs in a false light and defamed them by the collective action of setting the scene in the Ramapough Mountains of New Jersey, by referring to the criminal gang and/or the community as Jackson Whites and by using the DeGroat and Van Dunk surnames for the principal villains, all of which make for a ready association between these Plaintiffs and the movie.

53. As a direct and proximate result of the actions of the Defendants, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand judgment on this Count against the Defendants, jointly and severally, for compensatory damages, punitive damages and costs of suit.

## SECOND COUNT

54. Defendants were careless in using the Plaintiffs' and their community's offensive and pejorative nickname and their geographical location and their surnames in conjunction, and were indifferent to the consequences of their actions in doing so.

55. It was foreseeable that the members of the Ramapough community, and especially members of the DeGroat family, would be embarrassed, shamed and humiliated by the movie, and would suffer mental anguish and emotional distress as a result of it.

56. Plaintiffs have, in fact, suffered and continue to suffer mental anguish and emotional distress as a result of the movie's publication and dissemination.

WHEREFORE, Plaintiffs demand judgment on this Count against the Defendants jointly and severally for compensatory damages, punitive damages and costs of suit.

/s/  Lydia B. Cotz   7098
47 S. Franklin Turnpike
Ramsey, New Jersey 07446
Phone 201-327-0900
Fax     201-327-0019
Attorney for Plaintiffs

## JURY DEMAND

Plaintiffs demand trial by jury on all issues.

/s/ Lydia B. Cotz    7098