# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILBUR C. DEGROAT, III, ARLITTA DEGROAT, LEON DEGROAT, DIANE DEGROAT, PIA DEGROAT DENNISON, MARIE DEGROAT MANN, RODNEY VAN DUNK, EUNICE DEGROAT, GILBERT DEGROAT, ROSEMARIE MANN, AMANDA MANN, DAWN MANN, SANTANA PETERSON, JAZMINE PETERSON, RACHAEL MANN, DANIEL W. DENNISON, JR and JON VAN DUNK, | Hon. William H. Walls, Senior U.S.D.J. Hon. Cathy Waldor, U.S.M.J.<br><br>Case No. 2:13-CV-07779-WHW-CLW<br><br>Document Filed Electronically |
|        Plaintiffs, | |
| v. | |
| SCOTT COOPER; BRAD INGLESBY; RELATIVITY MEDIA, LLC a California limited liability company; APPIAN WAY, LLC, a California limited liability company; ENERGY ENTERTAINMENT, INC., a California corporation; SCOTT FREE PRODUCTIONS, INC., a California corporation; RED GRANITE PICTURES, INC. a California corporation; and JOHN DOES 1 to 5, | |
|        Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

## ORAL ARGUMENT REQUESTED
## MOTION DAY: APRIL 21, 2014

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102

**K&L GATES LLP**
70 West Madison Street, Suite 3100
Chicago, IL 60602-4207

**Katten Muchin Rosenman LLP**
2029 Century Park East, Suite 2600
Los Angeles, California 90067

**Katten Muchin Rosenman LLP**
575 Madison Avenue
New York, New York 10022

*Attorneys for Defendants*

On the Brief:
    Mark D. Marino, Esq. (N.J. Attorney I.D. No. 029171998)
    Carol A. Genis, Esq. (application for admission pro hac vice pending)
    Joseph C. Wylie II, Esq. (application for admission pro hac vice pending)
    Joel R. Weiner, Esq. (application for admission pro hac vice pending)
    Alan R. Friedman, Esq.  (application for admission pro hac vice pending)

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ....................................................................................1

II.    THE COMPLAINT ................................................................................5

       A.    Facts Alleged In The Complaint ...........................................5

       B.    Legal Claims Alleged In The Complaint ...............................7

III.   LEGAL STANDARD ............................................................................7

IV.    ARGUMENT..........................................................................................9

       A.    The First Count Fails To State A Claim For Defamation Or
             False Light .............................................................................10

             1.    To State A False Light Or Defamation Cause of Action,
                   Plaintiffs Must Plead Facts That Show That The Picture
                   Is "Of And Concerning" Plaintiffs Individually ......................11

             2.    Plaintiffs Cannot State A Claim For "Defamation By
                   Fiction" Because The Picture Cannot Be Understood As
                   Depicting Or Making Factual Claims About Any Plaintiff......14

             3.    Even If The Picture Did Make Factual Claims – Which It
                   Does Not – Plaintiffs' First Count Still Would Fail to
                   State A Claim Under The Group Libel Doctrine ......................19

       B.    Plaintiffs Cannot Plead Around The Complaint's Deficiencies
             By Purporting To State A Claim For Negligent Infliction Of
             Emotional Distress ...............................................................24

             1.    The Second Count Is Wholly Duplicative Of The First
                   Count And Should Be Dismissed On The Same Grounds .......24

             2.    Plaintiffs Do Not, In Any Event, Allege Facts That, If
                   True, Would State A Claim For Emotional Distress ...............27

V.     CONCLUSION.....................................................................................29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramson v. Pataki*,
    278 F.3d 93 (2d Cir. 2002) .......................................................................19, 20

*Aguilar v. Universal City Studios, Inc.*,
    174 Cal. App. 3d 384, 219 Cal. Rptr. 891 (Cal. App. Ct. 1985) .......................16

*In re Air Crash at Belle Harbor, N.Y. on November 12, 2001*,
    508 F. Supp. 2d 244 (S.D.N.Y. 2007) ...............................................................27

*Algarin v. Town of Wallkill*,
    421 F.3d 137 (2d Cir. 2005) ...............................................................12, 20, 23

*Allen v. Gordon*,
    86 A.D.2d 514, 446 N.Y.S.2d 48 (N.Y. App. Ct. 1982) ....................................16

*Angle v. United States*,
    No. 12-CV-2495, 2012 WL 6708165 (D.N.J. Dec. 21, 2012) ...........................27

*Anyanwu v. CBS, Inc.*,
    887 F. Supp. 690 (S.D.N.Y. 1995). .............................................................22, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................8

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007) ........................................................................9, 29

*Barger v. Playboy Enterprises, Inc.*,
    564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir.
    1984). .................................................................................................14, 22, 23

*Bates v. P.C. Cast*,
    316 P.3d 246 (Okla. App. Ct. 2013) .................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................7, 8, 28

*Blatty v. New York Times Co.*,
    42 Cal. 3d 1033, 232 Cal. Rptr. 542, 728 P.2d 1177 (Cal. 1986) ...........3, 12, 26

*Bolalin v. Guam Publications, Inc.*,
    No. 93-CV-005, 1994 WL 1886692 (N. Mar. I. Sup. Ct. Sept. 9,
    1994) ........................................................................................................20

*Botts v. The N.Y. Times Co.*,
    No. 03-CV-1582, 2003 WL 23162315 (D.N.J. Aug. 29, 2003)............11, 15, 16

*Brighton v. McIntosh*,
    No. 10-CV-8282, 2011 WL 3585982 (S.D.N.Y. Jul. 28, 2011).......................13

*Carlucci v. Poughkeepsie Newspapers, Inc.*,
    57 N.Y.2d 883, 456 N.Y.S.2d 44 (N.Y. 1982) ...................................................12

*Carter-Clark v. Random House, Inc.*,
    196 Misc. 2d 1011, 768 N.Y.S.2d 290 (N.Y. App. Ct. 2003), *aff'd*,
    17 A.D.3d 241, 793 N.Y.S.2d 394 (N.Y. 2005) ...................................16

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998) ....................................................14

*Cibenko v. Worth Publishers, Inc.*,
    510 F. Supp. 761 (D.N.J. 1981) ........................................................13

*Clare v. Farrell*,
    70 F. Supp. 276 (D. Minn. 1947).......................................................16

*DeAngelis v. Hill*,
    180 N.J. 1, 847 A.2d 1261 (N.J. 2004) ..............................................9

*Decker v. Princeton Packet, Inc.*,
    116 N.J. 418, 561 A.2d 1122 (N.J. 1988)...............................25, 26, 28

*Diaz v. NBC Universal, Inc.*,
    337 F. App'x 94 (2d Cir. 2009).........................................................19

*Diaz v. NBC Universal, Inc.*,
    536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94
    (2d Cir. 2009)................................................................................*passim*

*Dombrowski v. Pfister*,
　　380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).........................................14

*Dontigney v. Paramount Pictures Corp.*,
　　411 F. Supp. 2d 89 (D. Conn. 2006)...........................................................21, 22

*Dworkin v. Hustler Magazine, Inc.*,
　　867 F.2d 1188 (9th Cir. 1989) .......................................................................25

*Evans v. Walgreen Co.*,
　　813 F. Supp. 2d 897 (W.D. Tenn. 2011) ........................................................28

*Friends of Falun Gong v. Pac. Cultural Enter., Inc.*,
　　288 F. Supp. 2d 273 (E.D.N.Y. 2003), *aff'd*, 109 Fed. App'x 442
　　(2d Cir. 2004).................................................................................................21

*G.D. v. Kenny*,
　　205 N.J. 275, 15 A.3d 300, 318 (N.J. 2011) ..................................................25

*Gard v. Harris*,
　　No. 08-CV-01939, 2010 WL 844810 (Tenn. App. Ct. Mar. 11,
　　2010) ..............................................................................................................13

*Hustler Magazine v. Falwell*,
　　485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988)......................................25

*Jablonowska v. Suther*,
　　195 N.J. 103, 948 A.2d 610 (N.J. 2008)........................................................28

*Johnson v. Peralta*,
　　No. 12-CV-3604, 2013 WL 775541 (D.N.J. Feb. 27, 2013)...................8, 24, 29

*Joseph Burstyn, Inc. v. Wilson*,
　　343 U.S. 495 (1952)..........................................................................................1

*Leidholdt v. L.F.P., Inc*,
　　860 F.2d 890 (9th Cir. 1988) .........................................................................25

*Levey v. Warner Bros. Pictures*,
　　57 F. Supp. 40 (S.D.N.Y. 1944) .....................................................................16

*Mayer v. Belichick*,
　　605 F.3d 223 (3d Cir. 2010) .............................................................................8

*Michigan United Conservation Clubs v. CBS News*,
  485 F. Supp. 893 (W.D. Mich. 1980) ......................................................3, 11, 20

*Middlebrooks v. Curtis Publ'g Co.*,
  413 F.2d 141 (4th Cir. 1969) ....................................................................15, 18

*Morrow v. Balaski*,
  719 F.3d 160 (3d Cir. 2013) ..........................................................................8, 29

*New York Times Co. v. Sullivan*,
  376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)...........................12, 19, 20

*Polydoros v. Twentieth Century Fox Film Corp.*,
  67 Cal. App. 4th 318 (Cal. App. Ct. 1997).......................................................17

*Ramsey v. Fox News Network, LLC*,
  351 F. Supp. 2d 1145 (D. Colo. 2005)................................................................4

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ............................................................................17

*Saha v. Lehman*,
  537 F. Supp. 2d 122 (D. D.C. 2008)................................................................12

*Sarver v. The Hurt Locker, LLC*,
  No. 2:10-CV-09034, 2011 WL 11574477 (C.D. Cal. Oct. 13,
  2011), *appeal vacated and deferred*, No. 11-56986 (9th Cir. Oct.
  29, 2013) ........................................................................................................17

*Scelfo v. Rutgers University*,
  182 A.2d 445, 116 N.J. Super. 403 (N.J. Sup. Ct. 1971) ...................................11

*Shaw v. Hous. Auth. of Camden*,
  No. 11-CV-4291, 2012 WL 3283402 (D.N.J. Aug. 10, 2012)............................8

*Springer v. Viking Press*,
  90 A.D.2d 315, 457 N.Y.S.2d 246 (N.Y. App. Ct. 1982), *aff'd*, 60
  N.Y.2d 916 (N.Y. 1983) .............................................................................16, 17

*Steele v. Ritz*,
  No. 08-CV-02125, 2009 WL 4825183 (Tenn. App. Ct. Dec. 16,
  2009) ...............................................................................................................20

*Talal v. Fanning*,
    506 F. Supp. 186 (N.D. Cal. 1980) ....................................................................20

*Truong v. Am. Bible Society*,
    367 F. Supp. 2d 525 (S.D.N.Y. 2005) ..............................................................20

*Umland v. PLANCO Fin. Serv., Inc.*,
    542 F.3d 59 (3d Cir. 2008) ...............................................................................8

*West v. Media Gen. Convergence, Inc.*,
    53 S.W.3d 640 (Tenn. 2001) ...........................................................................13

*Wheeler v. Dell Pub. Co.*,
    300 F.2d 372 (7th Cir. 1962) ...........................................................................16

*Wright v. R.K.O. Radio Pictures*,
    55 F. Supp. 639 (D. Mass. 1944) .....................................................................16

*Zerpol Corp. v. DMP Corp.*,
    561 F. Supp. 404 (E.D. Pa. 1983) ...............................................................14, 15

**Rules**

Fed. R. Civ. Pro. 12(b)(6) ....................................................................................4, 7

**Constitutional Provisions**

First Amendment...........................................................................................*passim*

United States Constitution .................................................................................1, 19

**Secondary Sources**

*False Light Invasion of Privacy - Cognizability and Elements*, 57
    A.L.R. 4th 22 (2010)........................................................................................12

Restatement (Second) of Torts § 564 (1977)..............................................13, 16, 19

Restatement (Second) of Torts, § 564A (1977)....................................................23

Restatement (Second) of Torts § 652E (1977) .................................................13, 15

Defendants Relativity Media, LLC; Scott Cooper; Brad Inglesby; Appian Way, LLC; Energy Entertainment, Inc.; Scott Free Productions, Inc.; and Red Granite Pictures, Inc. (collectively, the "Defendants"), by their attorneys, state as follows as their Brief in Support of Motion to Dismiss the complaint filed in this action (the "Complaint"):

## I.    <u>INTRODUCTION</u>

Plaintiffs' claims in this lawsuit, all of which are based on the content of the fictional motion picture *Out of the Furnace* (the "Picture"), are unfounded under the common law and contrary to the United States Constitution.  More than sixty years ago, the United States Supreme Court established that motion pictures are "a significant medium for the communication of ideas" that are protected under the First Amendment and whose importance "is not lessened by the fact that they are designed to entertain as well as to inform."  *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952).  The First Amendment protection applies fully to movies, like the Picture, that are works of fiction that were made for profit.  *Id.* at 501-02.

Plaintiffs, seventeen members of the Ramapough Lunaape Nation (the "Ramapough Lunaape Nation"), take issue with certain elements of the Picture. That does not provide them with any cause of action.  It is common to find divergent opinions about First Amendment protected creative works, which are meant to entertain, provoke and stimulate thought and discussion.  It is also

commonplace for people to express their likes, dislikes and opinions about movies they see, books they read and music they hear.  The problem here, however, is that instead of expressing their disagreement with the contents of the Picture, Plaintiffs filed a lawsuit.

Plaintiffs claim that the Picture defamed them, presented them in a false light and caused them emotional distress because Plaintiffs, themselves, are members of the Ramapough Lunaape Nation and because some of the Plaintiffs live in the Ramapo Mountains (where a portion of the Picture allegedly takes place) and have the same admittedly "well-known, common surname" (but not first name) as two fictional characters in the Picture.  None of these allegations are referable to the Plaintiffs themselves as unique individuals independent of the group to which they allege they belong.  Plaintiffs' lawsuit, if permitted to proceed beyond the pleading state, will chill free speech by subjecting creators and distributors of movies and other works of fiction to liability whenever some members of a distinct ethnic, cultural, social or other definable group dislike how their group is presented.

Fortunately, traditional tort law and the First Amendment make clear that Plaintiffs' claims – all of which are based on the depictions of a fictitious criminal gang in the Picture that is allegedly comprised of members of the Ramapough Lunaape Nation and identified as "Jackson Whites" – are deficient.  Under the law,

the allegedly actionable statements or depiction complained about must be "of and concerning" and identifiable with the Plaintiffs *as individuals*, not as members of a group.  The logic of this rule is beyond debate:

> If plaintiffs were allowed to proceed with this [group libel] claim, it could invite any number of vexatious lawsuits and seriously interfere with public discussions of issues, or groups, which are in the public eye.  Statements about a religious, ethnic, or political group could invite thousands of lawsuits from disgruntled members of these groups claiming that the portrayal was inaccurate and thus libelous.

*Michigan United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 900 (W.D. Mich. 1980) (dismissing plaintiff sports hunters' defamation and false light claims based upon alleged negative depiction of hunting in two television programs because allegedly defamatory content did not concern plaintiffs as individuals). *Accord*, *Blatty v. New York Times Co.,* 42 Cal. 3d 1033, 1044, 232 Cal. Rptr. 542, 728 P.2d 1177 (Cal. 1986).

The First Count of the Complaint, in which Plaintiffs purport to assert defamation and/or false light claims, fails to satisfy the required "of and concerning" element of those claims for two independent reasons.  First, Plaintiffs fail to allege, as they must, facts from which a reasonable person would understand that a fictional character in the Picture was, in actual fact, a depiction of the Plaintiffs.  As a result, Plaintiffs have not satisfied their burden of pleading a "defamation by fiction" claim.  Second, Plaintiffs' allegations concern matters that are not applicable to Plaintiffs as individuals, but rather by virtue of their

membership in the Ramapough Lunaape Nation.  Accordingly, their objection to the depiction of the fictitious gang in the Picture also fails under the "group libel doctrine."

The Second Count, for negligent infliction of emotional distress, fares no better.  Courts routinely hold that an emotional distress cause of action derived from a defective defamation claim fails to state a claim.  Moreover, even assuming *arguendo* that this rule did not block Plaintiffs' Second Count – which it does – the Second Count still fails as a matter of law.  The Complaint does not, and cannot, allege facts to support the required elements of a negligent infliction of emotional distress claim because Defendants (i) do not owe a duty of care to Plaintiffs, (ii) have not endangered Plaintiffs' physical safety, and (iii) did not threaten Plaintiffs with physical harm or cause Plaintiffs to witness the death or serious bodily injury of an immediate family member.

Especially in light of the chilling effect cast by lawsuits challenging First Amendment protected works, Plaintiffs' deficient complaint should be dismissed without delay.  *See, e.g.*, *Ramsey v. Fox News Network, LLC*, 351 F. Supp. 2d 1145, 1153 (D. Colo. 2005) (granting Rule 12(b)(6) motion; noting that "threat of protracted litigation in defamation cases could have a chilling effect upon constitutionally protected rights of free speech").

## II.    <u>THE COMPLAINT</u>

### A.    Facts Alleged In The Complaint

In the Complaint, Plaintiffs describe the motion picture *Out of the Furnace*

as follows:

> The Furnace movie revolves around the efforts of its protagonist . . .
> to keep his younger brother on a straight path; but the young man
> becomes involved in an underground bare-knuckle fight ring leading
> to his murder by a violent and evil character, Harlan De Groat, who is
> the chief of a gang of "inbreds" living in the Ramapo Mountains in
> New Jersey. Harlan DeGroat . . . is the head of a criminal gang that is
> identified as the Jackson Whites; which gang is described as a
> community of "inbreds" that inhabits the Ramapo Mountains in New
> Jersey. Another gang member is identified as Dwight Van Dunk. The
> community is depicted as lawless, drug addicted, impoverished and
> violent; and the members appear to be of some sort of racially mixed
> heritage. After his brother disappears, the movie follows the
> protagonist's efforts to identify and locate the killer….

(Compl. ¶ 35.)  Plaintiffs allege that various characters make certain statements

regarding the Harlan DeGroat character and his "gang."  (Compl. ¶¶ 36-38.)

Plaintiffs allege further that the Picture refers to Harlan DeGroat and his "gang" as

living in or near Bergen County, New Jersey, and/or the Ramapo Mountains,

traveling via ATVs (all-terrain vehicles), and being recognizable as Ramapoughs.

(Compl. ¶¶ 39, 41-42.)  Finally, the Complaint alleges that the Harlan DeGroat

character is based on "someone" known to one of the Defendants' families and that

one of the actors involved was instructed to do research concerning "'people in that

area of the country.'"  (Compl. ¶¶ 50, 51.)

5

Plaintiffs further allege that they are members of the "Ramapough Lunaape Nation, a Native American ethnic group recognized as a tribe by the States of New Jersey and New York." (Compl. ¶ 28.) They also allege that the surnames "DeGroat and Van Dunk are well known common surnames among the Ramapough Lunaape Nation, and have been for two hundred years or so." (Compl. ¶ 33.) Plaintiffs state that "[i]t is common knowledge that the 'Rampaoughs' [sic] live in the Ramapo Mountains in New Jersey." (Compl. ¶ 39.) Finally, Plaintiffs assert that members of the Ramapough Lunaape Nation have in the past been derogatorily referred to as "Jackson Whites" and regularly travel by ATVs.[1] (Compl. ¶¶ 30, 41.)

The Complaint is notable for what it does not allege: that any of the characters in the Picture are based on, bear any resemblance to, or are identifiable (or meant to be identifiable) as any of the Plaintiffs. While certain Plaintiffs share surnames with two characters in the Picture, the Complaint does not allege that either of these characters shares their full names. The Complaint also does not allege that any character in the Picture shares any distinctive physical

---

[1] In fact, the surname of one of the fictional characters, Dwight Van Dunk, appears only in the written credits at the end; the "Van Dunk" surname is not stated in the Picture. Further, despite Plaintiffs' assertions in eleven separate paragraphs of the Complaint about the use of the allegedly derogatory "Jackson Whites" term, such term is not stated and does not otherwise appear in the Picture at all. Even if it did appear in the Picture, the Complaint should be dismissed for the reasons discussed below.

characteristics or biographical details with any Plaintiff, or that the events of the movie are similar to any real-life events involving any Plaintiff.  The Complaint does not even allege that any Plaintiff was known to any Defendant.  In short, the Complaint does not make any allegation whatsoever that any character in the movie could be understood to represent any of the Plaintiffs individually based upon such Plaintiff's specific appearance, life events or personal characteristics.

### B.     Legal Claims Alleged In The Complaint

The Complaint purports to state two causes of action.  The First Count alleges that Defendants "put the Plaintiffs in a false light and defamed them." (Compl. ¶ 52.)  The First Count does not specify the legal theory under which it is pled.  The Second Count alleges that "Defendants were careless in using the Plaintiffs' and their community's offensive and pejorative nickname and their geographical location and their surnames in conjunction, and were indifferent to the consequences of their actions in doing so."  (Compl. ¶ 54.)  The Second Count also does not specify the legal theory under which it is pled.

### III.   <u>LEGAL STANDARD</u>

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiffs fail to state a claim upon which relief can be granted.  Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Further, a claim only has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556) ("[t]he plausibility standard . . . asks for more than a sheer possibility"); *see also Johnson v. Peralta*, No. 12-CV-3604, 2013 WL 775541, at *1 (D.N.J. Feb. 27, 2013) (dismissing complaint alleging defamation and negligent infliction of emotional distress actions); *Shaw v. Hous. Auth. of Camden*, No. 11-CV-4291, 2012 WL 3283402 (D.N.J. Aug. 10, 2012) (dismissing complaint alleging, among other actions, defamation and infliction of emotional distress).

In addition, on a motion to dismiss, the court "is not required to accept legal conclusions alleged in the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010) (citation omitted). As the Third Circuit has explained: "[a]lthough we must accept the allegations in the complaint as true, 'we are not compelled to

accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)), *cert. denied* ___ U.S. ___, 134 S. Ct. 824 (2013).  Finally, in determining whether the alleged depiction of the fictitious criminal gang in the Picture gives rise to actionable claims, "[w]hether the statement is susceptible of a defamatory meaning is a question of law for the court [to decide]." *DeAngelis v. Hill*, 180 N.J. 1, 14-15, 847 A.2d 1261, 1268-69 (N.J. 2004) (internal citations and quotations omitted).

Under the foregoing standards, Plaintiffs' claims cannot be sustained.

## IV.  **ARGUMENT**

Plaintiffs' claims – all of which arise from the Picture's alleged portrayal of characters in a fictitious gang of criminals who are allegedly identifiable as members of the Ramapough Lunaape Nation – cannot stand in the face of the freedom of speech rights established in the First Amendment.  Plaintiffs have no right to prevent defendants (or anyone else) from creating fictitious works that include criminal gangs, even gangs allegedly consisting of members of the Ramapough Lunaape Nation that are portrayed with negative characteristics.  In fact, criminal gangs comprised of members of specific ethnic groups have been portrayed in such a manner in many movies including, among others, *The Godfather* (Italian gang), *The Departed* (Irish gang), and *Once Upon A Time In*

*America* (Jewish gang).  Plaintiffs really seek through this lawsuit to deter

Defendants – or any other motion picture company, book publisher or other media

outlet – from creating works of fiction that involve the Ramapough Lunaape

Nation unless Plaintiffs approve of the depiction.  This type of chilling censorship

has no place in the United States under well-established First Amendment

jurisprudence and should be dismissed without delay.

### A.    The First Count Fails To State A Claim For Defamation Or False Light

As discussed below, dismissal of the First Count is proper in this case under

two legal doctrines that share a long-established, common-sense basis:  the

Complaint should be dismissed because it does not contain the required threshold

allegations that the Picture makes (or can be understood to make) factual

statements specifically about Plaintiffs as individuals.  Plaintiffs allege only that

certain of the characters in the Picture are identifiable as members of the

Ramapaugh Lunaape Nation;[2] that some of those characters are depicted as having

unsavory characteristics; and that other characters in the Picture make offensive or

stereotypical statements about those fictional characters.  Plaintiffs then argue that

because they are members of the Ramapough Lunaape Nation and some of them

---

[2] Although the allegation that characters in the Picture can be understood as
members of the Ramapough Lunaape Nation is taken as true for purposes of this
Motion, Defendants contest that in fact, any character in the Picture can be
understood to be a member of the Ramapough Lunaape Nation.

live in the geographic region depicted in the Picture and/or have a common surname, they have been harmed by being defamed and/or placed in a false light, and by being shamed and embarrassed.  This is insufficient as a matter of law to bring a lawsuit.  Regardless of the label used or the doctrine considered, Plaintiffs have not alleged that the Picture is about them as individuals.  Without that allegation, the First Count is defective and must be dismissed.[3]

**1.     To State A False Light Or Defamation Cause of Action, Plaintiffs Must Plead Facts That Show That The Picture Is "Of And Concerning" Plaintiffs Individually**

Each of these causes of action requires that the allegedly actionable statements pertain specifically to the plaintiff as an individual.  "An essential ingredient of a libel is that it must be 'of and concerning' the plaintiff so that a third person could understand the communication to relate to said plaintiff."  *Scelfo v. Rutgers University*, 182 A.2d 445, 448, 116 N.J. Super. 403, 408 (N.J. Sup. Ct. 1971).  Similarly, to establish a false light claim, a plaintiff must show that the allegedly actionable statement was identifiable specifically with the plaintiff.  *See, e.g.*, *Botts v. The N.Y. Times Co.*, No. 03-CV-1582, 2003 WL 23162315, at *6-7 (D.N.J. Aug. 29, 2003); *Michigan United Conservation Clubs, supra,* 485 F. Supp.

---

[3] Although Plaintiffs obscure the legal theory of their First Count by alleging collectively that the Picture "put [them] in a false light and defamed them," (Compl. ¶ 52), Plaintiffs' failure to choose between these two causes of action is irrelevant: the First Count is deficient under both, as a matter of law.

at 904 ("of and concerning" requirement of defamation claims also applies to false light claims) (applying Michigan law); *Saha v. Lehman*, 537 F. Supp. 2d 122, 127 (D. D.C. 2008) (same) (applying District of Columbia law).

The requirement that a defamation or false light plaintiff allege facts that, if true, demonstrate that the allegedly actionable statement is "of and concerning" the plaintiff specifically is mandated by long-standing tort law and the First Amendment.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 288, 84 S. Ct. 710, 730, 11 L. Ed. 2d 686 (1964)*; Algarin v. Town of Wallkill*, 421 F.3d 137, 139-40 (2d Cir. 2005); *Carlucci v. Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883, 885, 456 N.Y.S.2d 44, 45 (N.Y. 1982); *Blatty v. New York Times Co.,* 42 Cal. 3d 1033, 1047, 232 Cal. Rptr. 542, 728 P.2d 1177 (Cal. 1986) (court rejected plaintiff's argument that "of and concerning" requirement does not derive from First Amendment as "plainly without merit"); Russell G. Donaldson, *False Light Invasion of Privacy - Cognizability and Elements*, 57 A.L.R. 4th 22, at 122 (2010) ("[a]s a matter of common sense, there can be no recovery for a false depiction . . . if the public cannot be made aware that the plaintiff is . . . being depicted . . . ."). In *Sullivan,* the Supreme Court held that the plaintiff's defamation claim was

"constitutionally defective" because he could not show that the challenged statements were "of and concerning" him.  376 U.S.at 288.[4]

Dismissal of the First Count is, thus, proper, because it does not allege that the Picture makes factual statements specifically about any of the Plaintiffs as individuals.  In fact, Plaintiffs fail the "of and concerning" requirement for two separate reasons.  First, to establish a defamation or false light claim based upon characters in a work of fiction, the fictional work must be understood to depict the plaintiff specifically.  The Complaint fails to satisfy this pleading requirement.  *See* Point IV(A)(2) below.  Second, because the allegations underlying Plaintiffs' claim in the First Count are not "of and concerning" Plaintiffs individually, but rather a

---

[4] Because the "of and concerning" requirement is Constitutional, a choice of law analysis is unnecessary.  However, to the extent that state law issues are relevant, the applicable Restatement sections for defamation and false light also require that the statement be of and concerning the Plaintiff specifically.  *See* Restatement (Second) of Torts § 564 cmt. a (1977); Restatement (Second) of Torts § 652E (1977).  New Jersey and Tennessee (states of residence of some Plaintiffs, (Compl. ¶¶ 1-15)) have adopted the Restatement for both defamation and false light claims; and New York has adopted the Restatement for defamation claims.  *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009) (citing Restatement for elements of defamation claim); *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 764-66 (D.N.J. 1981) (recognizing false light and defamation claims consistent with Restatement); *Gard v. Harris*, No. 08-CV-01939, 2010 WL 844810, at *3-4 (Tenn. App. Ct. Mar. 11, 2010) (citing *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001) (endorsing approach of Restatement to false light and defamation claims)).  New York does not recognize false light claims brought under common law.  *Brighton v. McIntosh*, No. 10-CV-8282, 2011 WL 3585982, at *3 (S.D.N.Y. Jul. 28, 2011).  Accordingly, to the extent that any of the Plaintiffs purport to bring a false light claim under New York law, such a claim must be dismissed.

13

group to which Plaintiffs belong, Plaintiffs' claim is defective under the group libel doctrine.  *See* Point IV(A)(3) below.

In light of the chilling effect that defamation suits may have, it is imperative that suits that fail to meet this high Constitutional bar be dismissed at the pleading stage.  As the Supreme Court has explained, "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).  Thus, lawsuits are routinely dismissed at the pleading stage for failing to allege that the statements at issue are "of or concerning" the plaintiffs.  *See, e.g.*, *Diaz*, 536 F. at 343; *Barger v. Playboy Enterprises, Inc.*, 564 F. Supp. 1151, 1155 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 355-56 (S.D.N.Y. 1998); *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 413-14 (E.D. Pa. 1983).

### 2. Plaintiffs Cannot State A Claim For "Defamation By Fiction" Because The Picture Cannot Be Understood As Depicting Or Making Factual Claims About Any Plaintiff

Plaintiffs allege that they are members of the same ethnic group as certain fictional characters depicted in the Picture, that some (but not all) Plaintiffs reside in the same geographic area depicted in the Picture, and that some (but not all) Plaintiffs share surnames with some of those characters.  Those are the sole points of similarity alleged between the characters in the Picture and Plaintiffs.  As

discussed below, these allegations are insufficient as a matter of law for multiple reasons.

First, a defamation or false light cause of action based on an unambiguously fictitious work is not actionable.  *See Botts v. The N.Y. Times Co.*, No. 03-CV-1582, 2003 WL 23162315, at *6-7 (D.N.J. Aug. 29, 2003); *see also Zerpol Corp.*, 561 F. Supp. at 413; *Middlebrooks v. Curtis Publ'g Co.*, 413 F.2d 141, 143 (4th Cir. 1969).  There can be no "'falsity of the publicized matter,' and, therefore, no reckless disregard for such falsity" where "a statement obviously purports to be fictitious."  *Botts*, No. 03-CV-1582, 2003 WL 23162315, at *7 (dismissing false light and defamation claims under New Jersey law) (internal quotation omitted); Restatement (Second) of Torts § 652E cmt a, Reporter's Note (1977) ("[t]here is no cause of action if the statement obviously purports to be fictitious") (internal citation and quotation omitted).  Here, the Picture is obviously fictional, as are its characters.  Accordingly, Plaintiffs' First Count fails.

Second, "courts uniformly hold that, in order to establish a claim for defamation arising from a work of fiction, it must be shown that, viewing the work of fiction as a whole, the fictional character would be understood to depict the plaintiff, and *the test is whether a reasonable reader would understand the fictional character 'was, in actual fact, [the plaintiff] conducting herself as described.*'"  *Bates v. P.C. Cast*, 316 P.3d 246 (Okla. App. Ct. 2013) (emphasis

added) (internal citation and quotation omitted).[5]  In other words, "for a

defamatory statement or statements made about a character in a fictional work to

be actionable the description of the fictional character must be so closely akin to

the real person claiming to be defamed that a reader of the book, knowing the real

person, would have no difficulty linking the two.  Superficial similarities are

insufficient . . . ."  *Springer v. Viking Press*, 90 A.D.2d 315, 320, 457 N.Y.S.2d

246 (N.Y. App. Ct. 1982), *aff'd*, 60 N.Y.2d 916 (N.Y. 1983).  In short, the standard

to allege defamation in a fictional work is an exacting one: the characters or plot

must bear such a resemblance to actual persons or events as to make it reasonable

for its readers or audience to understand that a particular character is intended to

portray that person.  Restatement (Second) of Torts § 564 cmt d.

    Claims of defamation and false light brought against works of fiction

generally fail to meet this high standard, even in cases in which the fictional work

is based in some degree on actual persons or events.  For example:

---

[5] *Accord, Botts*, 106 Fed. App'x at 110 (dismissing libel and false light claims);
*Carter-Clark v. Random House, Inc.*, 196 Misc. 2d 1011, 1014-15, 768 N.Y.S.2d
290 (N.Y. App. Ct. 2003), *aff'd*, 17 A.D.3d 241, 793 N.Y.S.2d 394 (N.Y. 2005);
*Aguilar v. Universal City Studios, Inc.*, 174 Cal. App. 3d 384, 387-88, 219 Cal.
Rptr. 891 (Cal. App. Ct. 1985); *Allen v. Gordon*, 86 A.D.2d 514, 514-15, 446
N.Y.S.2d 48 (N.Y. App. Ct. 1982); *Wheeler v. Dell Pub. Co.*, 300 F.2d 372, 376
(7th Cir. 1962) (citing *Levey v. Warner Bros. Pictures*, 57 F. Supp. 40 (S.D.N.Y.
1944)); *Clare v. Farrell*, 70 F. Supp. 276, 278 (D. Minn. 1947); *Wright v. R.K.O.
Radio Pictures*, 55 F. Supp. 639, 640 (D. Mass. 1944).

- In *Sarver v. The Hurt Locker, LLC*, plaintiff asserted defamation, false light and other claims against filmmakers, a reporter, and a publisher, alleging that defendants based the movie *The Hurt Locker* on his personal experiences while serving in the military without his consent.  No. 2:10-CV-09034, 2011 WL 11574477, at *1 (C.D. Cal. Oct. 13, 2011), *appeal vacated and deferred*, No. 11-56986 (9th Cir. Oct. 29, 2013).  One of the defendants, a reporter for a magazine, had followed plaintiff's unit in Iraq, taking photographs and videos while they were on and off duty, and conducted additional interviews with the plaintiff after he returned to the United States.  *Id.*  The reporter's article, which was the basis for the movie, focused entirely on plaintiff's life and experiences in Iraq.  *Id.*  The District Court dismissed the complaint in its entirety, holding that the defamation claim failed because no reasonable person would believe that the film was about the plaintiff.  *Id.* at *8 (internal citations omitted).  The Court held further that "[f]ictional works have no obligation to the truth . . . . [a]ll fiction, by definition, eschews an obligation to be faithful to historical truth."  *Id.* (internal citation and quotation omitted).

- In *Polydoros v. Twentieth Century Fox Film Corp.*, the plaintiff (Michael Polydoros) sued the producers and distributors of the motion picture *The Sandlot* for defamation, among other claims, for its portrayal of one of the film's characters, a 10-year old boy who shared an identically sounding name (Michael Palledorous) and distinctive physical characteristics with plaintiff.  67 Cal. App. 4th 318, 321 (Cal. App. Ct. 1997).  The film's writer used his childhood experiences in drafting the screenplay, and plaintiff had been one of his schoolmates.  *Id.* at 320-21.  The Court dismissed the defamation claim because the film was "manifestly not about appellant" but about a fictional character, because the plaintiff did not allege that the "film recreates true-life events," and because "[t]here is no law providing relief for defamation by a fictional work which does not portray the plaintiff at all."  *Id.* at 326 (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1005 (2d Cir. 1989)).

- In *Springer v. Viking Press, supra*, the appellate court upheld dismissal at the pleading stage of libel claims based on the plaintiff's allegation that the "whore" character in a novel written by the defendant depicted the plaintiff, despite the fact that the plaintiff and defendant previously had a "close personal relationship" that terminated "apparently with some rancor" and the fictional character had similarities with the plaintiff including living on the same street in Manhattan, having similar "physical attributes" and having the same first name.  90 A.D.2d at 316, 320.

- In *Middlebrooks v. Curtis Publ'g Co.*, the Court found that there was no defamation for publishing a fictional short story involving two larcenous teenagers where the story did not "parallel the plaintiff's life in any significant manner" despite the facts that the character's name was obviously based on plaintiff's; the author and plaintiff were childhood friends; and the author used "actual place names and geographical settings," which, the court found, did not "militate against the common understanding of fiction as fiction only."  413 F.2d 141, 143 (4th Cir. 1969).

Plaintiffs' First Count is significantly weaker than the claims in each of the cases cited above (each of which was resolved in favor of the defendants).  In the Complaint, Plaintiffs identify only two specific characters, both male, that could possibly be at issue: Harlan DeGroat and Dwight Van Dunk.  The only similarities alleged between those characters and the Plaintiffs are that (a) the characters are alleged to be identifiable as members of the Ramapough Lunaape Nation, as are the Plaintiffs; (b) the characters share surnames (or middle or maiden names) with some Plaintiffs; and (c) the Plaintiffs (save one) live in the general geographical area allegedly depicted in a portion of the Picture.  There are no other allegations in the Complaint that would support an inference that the characters bear any resemblance whatsoever to Plaintiffs, much less that those characters are based on or intended to portray Plaintiffs individually.

There is absolutely no way to conclude from those meager and superficial similarities that the Picture is intended, or can be understood as intending, to depict any particular Plaintiff.  Indeed, given that there are fifteen Plaintiffs and only two

characters named in the Complaint, Plaintiffs claims cannot possibly be based on

an allegation that the characters can be identified as depicting each of them.

Accordingly, because the Picture is unquestionably a work of fiction, and because

the Complaint does not contain allegations of facts which, if true, could cause a

viewer of the movie to understand that the characters in the Picture were actually

intended to "portray" any of the Plaintiffs, Restatement (Second) of Torts § 564

cmt d, the First Count must be dismissed.

### 3. Even If The Picture Did Make Factual Claims – Which It Does Not – Plaintiffs' First Count Still Would Fail to State A Claim Under The Group Libel Doctrine

"A defamation claim is insufficient if a statement merely makes reference to

the plaintiff as a member of a group (the 'group libel doctrine')." *Abramson v.

Pataki*, 278 F.3d 93, 102 (2d Cir. 2002) (citations omitted); *see also* Restatement

(Second) of Torts § 564A (1977).  The group libel doctrine is based on the same

foundation as the defamation-by-fiction standard discussed in the preceding

section: *i.e.*, "an individual plaintiff must be clearly identifiable to support a claim

for defamation."  *Id.*  This requirement arises out of both the United States

Constitution and common law.  *New York Times Co. v. Sullivan*, 376 U.S. 254,

288, 84 S. Ct. 710, 730, 11 L. Ed. 2d 686 (1964); *Diaz v. NBC Universal, Inc.*, 337

F. App'x 94, 96 (2d Cir. 2009) (dismissing group libel claim because "[a]s a

threshold, and constitutional, matter, a plaintiff alleging defamation must

demonstrate that the allegedly defamatory statement was 'of and concerning' him or her") (internal quotation and citation omitted).

The group libel doctrine prohibits defamation claims that are based on a plaintiff's membership in a group that is the subject of allegedly defamatory statements. *See, e.g., Sullivan*, 376 U.S. at 288 (dismissing libel suit because plaintiff could not demonstrate that allegedly libelous statements were made "of and concerning" him personally as opposed to group that included him); *Abramson*, 278 F.3d at 102 (group libel claim is "insufficient if the allegedly defamatory statements referenced the plaintiff solely as a member of a group"); *Algarin v. Town of Wallkill*, 421 F.3d 137, 139-40 (2d Cir. 2005) (allegedly defamatory statements in report created by police commissioners regarding police department did not sufficiently identify specific officers involved in alleged wrongdoing, even though pool of officers referred to in report "was small"); *Truong v. Am. Bible Society*, 367 F. Supp. 2d 525, 528–29 (S.D.N.Y. 2005) ("it is clear that 'group libel' is not actionable"); *Talal v. Fanning*, 506 F. Supp. 186, 187 (N.D. Cal. 1980) (internal citations omitted) (dismissing libel claim pursuant to group libel doctrine); *Steele v. Ritz*, No. 08-CV-02125, 2009 WL 4825183, at *3 (Tenn. App. Ct. Dec. 16, 2009).[6] Thus, if a plaintiff claims to have been defamed

---

[6] The "group libel" doctrine applies not just to libel claims, but also to false light claims. *See, e.g., Michigan United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 904 (W.D. Mich. 1980), *aff'd*, 655 F.2d 110 (6th Cir. 1981); *see also Bolalin*

only as a member of a group, the "of and concerning" requirement is not properly pleaded.  *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 343 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009).

As discussed above, Plaintiffs base the First Count on alleged depictions of an ethnic group, not of the Plaintiffs individually.  The First Count therefore is squarely within the group libel doctrine and must be dismissed.  "In order to overcome the group libel doctrine, *a plaintiff must demonstrate* that the circumstances of the publication reasonably give rise to the conclusion *that there is a particular reference to the member*."  *Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 282 (E.D.N.Y. 2003) (granting Rule 12(b)(6) motion to dismiss), *aff'd*, 109 Fed. App'x 442, 444 (2d Cir. 2004) (citations and quotations omitted, emphasis added).  In other words, the plaintiff must allege and be able to prove "circumstances from which it could be inferred that the film suggested a reference to him even if it did not name him."  *Dontigney v. Paramount Pictures Corp.*, 411 F. Supp. 2d 89, 93 (D. Conn. 2006).  And where, as here, group libel claims do not meet this threshold, they fail as a matter of law:

- In *Dontigney*, a movie's allegedly false depiction of Native Americans was not shown to be about the plaintiff individually, and thus could not be found

---

*v. Guam Publications, Inc.*, No. 93-CV-005, 1994 WL 1886692, at *7 (N. Mar. I. Sup. Ct. Sept. 9, 1994) (collecting cases).

to defame him where the movie made no reference to him, did not name him, and the class of Native Americans that were the subject of the movie was not so small that a reasonable viewer necessarily would believe the film was directed towards the plaintiff.  411 F. Supp. 2d at 93.

- In *Diaz*, the District Court dismissed a group defamation complaint asserted against the distributor of the motion picture *American Gangster*, which was a movie "based upon" a "true story involving a notorious heroin dealer, Frank Lucas."  The complaint alleged that a "legend" appearing on screen at the end of *American Gangster* that stated that Frank Lucas's cooperation with law enforcement led to the "conviction of three quarters of New York City's Drug Enforcement Agency" was false and defamatory.  Even though the Court assumed the truth of the allegation, it still dismissed the claim because nothing in the "legend" or the movie itself specifically referred to any of the 400 present and former Drug Enforcement Agency agents who brought the suit.  536 F. Supp. 2d 337 at 343.

- In *Barger v. Playboy Enter., Inc.*, the court dismissed a defamation complaint where statements regarding the "wives of the Hell's Angels" did not refer to any specific individual.  In the same case, the plaintiffs' amended complaint was subsequently dismissed despite being brought on behalf of a smaller sub-class of 15-20 Hell's Angels "brides" where the plain meaning of the word "brides" could not be read to mean the plaintiffs "without imputing an esoteric meaning to the term," the meaning had no reasonable basis in the article and was inaccessible to the ordinary reader. 564 F. Supp. 1151, 1153 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984).

- In *Anyanwu v. CBS, Inc.*, the District Court dismissed a defamation complaint that asserted claims on behalf of the plaintiff (a Nigerian businessman who did business with United States citizens) and all Nigerians engaged in business with United States citizens based on statements included in a "60 Minutes" broadcast, including, *e.g.*, that "Nigerians engaged in international business with United States citizens are fraudulent and deceitful."  The Court noted that nothing in the broadcast focused on the plaintiff and, accordingly, ruled that the plaintiff could not meet the "of and concerning" pleading element of his claim, because it was based on, at most, a "group defamation."  887 F. Supp. 690, 692-93 (S.D.N.Y. 1995).

Plaintiffs' allegations demonstrate that the depictions of the fictitious characters in the Picture do not pertain to them individually, but rather to them as alleged members of one or more of the following groups: (i) people "who live in the Ramapo Mountains of New Jersey," (ii) people "who are now, or formerly, known as Jackson Whites," and (iii) people "who have the family name of DeGroat and Van Dunk and who are known to live in the Ramapo Mountains and/or be part of the group now or formerly known as Jackson Whites." (*See* Compl. ¶¶ 45-47.)  As such, the Complaint presents an archetypal group-libel claim: individual plaintiffs suing based on statements made regarding a group of which they allegedly are members.[7]

Nor do the Plaintiffs make any allegations whatsoever to support an inference that the size or characteristics of the Ramapough Lunaape Nation is so limited that the supposed statements in the Picture are directed at them in particular.  By failing to allege facts plausibly supporting such an inference, the First Count fails to state a claim.  See Restatement (Second) of Torts, § 564A, cmt. b (1977); *Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005) (affirming dismissal of the group libel claim brought by twenty-three police officers and noting "[o]ften the size of a group is critical to the sufficiency of a claim by an

---

[7] As noted in Footnote 1 above, neither the "Van Dunk" surname nor the term "Jackson White" is ever stated during the Picture.

unnamed member of a group") (collecting cases);  *Barger*, 564 F. Supp. at 1153

(affirming dismissal at pleading stage; "[w]here the group is large - in general, any

group numbering over twenty-five members - the courts in California and other

states have consistently held that plaintiffs cannot show that the statements were

'of and concerning them'") (collecting cases).

### B.   Plaintiffs Cannot Plead Around The Complaint's Deficiencies By Purporting To State A Claim For Negligent Infliction Of Emotional Distress

The Second Count alleges that the Defendants acted carelessly and

indifferently, and that Plaintiffs suffered "mental anguish and emotional distress"

as a result.  (Compl. ¶¶ 54-56.)  Although Plaintiffs do not specify the cause of

action they purport to bring in the Second Count, it appears that they purport to

assert a claim for negligent infliction of emotional distress.  The Second Count

should be dismissed because it is duplicative of the First Count, and because it

does not allege facts sufficient to state a direct or indirect claim of negligent

infliction of emotional distress.

### 1.   The Second Count Is Wholly Duplicative Of The First Count And Should Be Dismissed On The Same Grounds

The Second Count should be dismissed because it is based on the same

conduct as Plaintiffs' defamation claim.  When additional tort claims are aimed at

the same speech that is the basis of a defamation claim, courts should not entertain

the additional claims under a different label.  *See Johnson v. Peralta*, No. 12-CV-

24

3604, 2013 WL 775541, at *2 (D.N.J. Feb. 27, 2013) ("[f]urthermore, Plaintiff's negligent infliction of emotional distress claim is weakened because it hinges on an insufficient defamation claim") (internal citation omitted); *G.D. v. Kenny*, 205 N.J. 275, 307, 15 A.3d 300, 318 (N.J. 2011) (dismissing libel and emotional distress claims where "intentional- and negligent-infliction-of-emotional-distress claims also fail because those torts are predicated on the same conduct alleged in the defamation claim") (*quoting Decker v. Princeton Packet, Inc.,* 116 N.J. 418, 432, 561 A.2d 1122 (N.J. 1989)); *Diaz*, 536 F. Supp. 2d at 344-45 (dismissing infliction of emotional distress claims because "when additional claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards"); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1193, n.2 (9th Cir. 1989) (if libel claim fails, neither emotional distress nor false light claims made on same fact pattern can stand) (citing *Leidholdt v. L.F.P., Inc*, 860 F.2d 890, 893 n.2 (9th Cir. 1988)); *Hustler Magazine v. Falwell*, 485 U.S. 46, 57, 108 S. Ct. 876, 882, 99 L. Ed. 2d 41 (1988) (where First Amendment barred defamation claim based upon magazine's publication of parody featuring plaintiff, First Amendment also barred plaintiff's claim for infliction of emotional distress based upon same parody); *Anyanwu v. CBS, Inc., supra,* 887 F. Supp. at 693 ("[w]hen additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not

entertain the additional claims under less stringent standards") (citing *Falwell,* 485

U.S. at 57).

As the New Jersey Supreme Court stated in *Decker*: "There is, in other

words, a certain symmetry or parallel between claims of emotional distress and

defamation that calls for consistent results.  Thus, it comports with [F]irst

[A]mendment protections to deny an emotional-distress claim based on a false

publication that engenders no defamation *per se*."  116 N.J. at 432.  Once again,

the reasoning behind this theory is clear and compelling:

> The fundamental reason that the various limitations noted in the First
> Amendment are applicable to all injurious falsehood claims and not solely to
> those labeled "defamation" is plain: although such limitations happen to
> have arisen in defamation actions, they do not concern matters peculiar to
> such actions but broadly protect free-expression . . . .

*Blatty v. New York Times Co.,* 42 Cal. 3d 1033, 1043, 232 Cal. Rptr. 542, 728 P.2d

1177, 1182 (Cal. 1986) (after affirming dismissal at pleading stage of defamation

claim on, among other grounds, failure to satisfy "of and concerning" requirement

under group libel doctrine, court ruled that First Amendment required dismissal of

additional tort claims based on same allegedly defamatory speech).

Plaintiffs' emotional distress claims rely on the same underlying facts and

are variations on the defamation claim.  Accordingly, they are superfluous and

must be dismissed.

**2.      Plaintiffs Do Not, In Any Event, Allege Facts That, If True, Would State A Claim For Emotional Distress**

Courts recognize a limited number of situations in which a plaintiff may bring an action for negligent infliction of emotional distress, none of which applies here.  Thus, the claim may only proceed where a defendant's alleged negligent conduct (1) causes plaintiff to suffer an emotional injury from defendant's breach of a duty which unreasonably endangered plaintiff's physical safety (the "direct" claim); (2) threatens plaintiff with physical harm as a result of defendant's negligence and plaintiff subsequently suffers emotional injury from witnessing the death or serious bodily injury of  a member of his or her immediate family (the "bystander" theory); or (3) causes "'an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious'" where defendant also owes plaintiff a direct duty of care.  *In re Air Crash at Belle Harbor, N.Y. on November 12, 2001*, 508 F. Supp. 2d 244, 247 (S.D.N.Y. 2007) (collecting cases).  "The duty in [this third class of] cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society."  *Id.* (internal citation and quotation omitted).[8]

---

[8] The laws of the other states potentially at issue in this case are similar or more restrictive.  *See, e.g.*, *Angle v. United States*, No. 12-CV-2495, 2012 WL 6708165, at *6 (D.N.J. Dec. 21, 2012) (under New Jersey law, plaintiff may bring claim where defendant (1) placed the plaintiff in "reasonable fear of immediate personal injury" and gave rise to emotional distress that resulted in a substantial bodily

Plaintiffs have not alleged any facts giving rise to any duty that any Defendant owes to them.  Nor have they alleged any facts that, if true, would demonstrate that Defendants endangered Plaintiffs' physical safety, threatened Plaintiffs with physical harm and/or caused Plaintiffs to suffer emotional distress from witnessing the death or serious injury of a member of his or her immediate family.

While Plaintiffs conclusorily allege that it was foreseeable that "members of the Ramapough community and especially members of the DeGroat family . . . would suffer mental anguish and emotional distress as a result of it" (Compl. ¶ 52), not only do these allegations fail to state a claim, but also the failure to support them with any allegations of fact renders them doubly defective.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3, 127 S. Ct. 1955, 167 L. Ed. 2d 929

---

injury or illness (a "direct" claim); or (2) caused the death of or serious injury to someone with whom the plaintiff shared a marital familial relation where the plaintiff had a contemporaneous observation of the scene, and suffered severe emotional distress as a result (a "Portee" claim)) (citing *Jablonowska v. Suther*, 195 N.J. 103, 104, 948 A.2d 610 (N.J. 2008) (collecting cases)); *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429, 561 A.2d 1122 (N.J. 1989) (recognizing claims where emotional distress is proximately caused by negligent conduct of one who owes legal duty to plaintiff to exercise reasonable care); *see also Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 938 (W.D. Tenn. 2011) (under Tennessee law, the five required elements of a negligent infliction of emotional distress claim are: (1) duty of care owed to plaintiff by defendant; (2) conduct by defendant that breaches this duty; (3) injury or loss; (4) cause-in-fact connection between plaintiff's injury or loss and defendant's conduct; and (5) existence of proximate or legal cause).

(2007); *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quoting

*Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)), *cert. denied* ___ U.S.

___, 134 S. Ct. 824 (2013).  Plaintiffs have not alleged any injuries which allow for

compensation under a negligent infliction of emotional distress theory.  The

Plaintiffs allege only that it was foreseeable that they would be "embarrassed,

shamed, and humiliated."  (Compl. ¶ 55.)  They have not alleged any facts

whatsoever regarding the nature or severity of the distress they claim to have

suffered.  Without such facts, they cannot meet their burden of demonstrating that

any such distress could rise to a level that could be actionable.  *See, e.g.*, *Johnson*,

No. 12-CV-3604, 2013 WL 775541, at *2 (bald assertion that defendant's

allegedly false statements caused him serious or severe emotional distress and

injury without further factual support was insufficient to state a claim for negligent

infliction of emotional distress).

## V.    **CONCLUSION**

As a matter of law and of Constitutional principle, the Plaintiffs' attempt to

assert claims based upon the alleged depiction of the Ramapough Lunaape Nation

in the Picture is not actionable.  Plaintiffs wholly failed to allege facts which, if

true, would allow them to circumvent long-standing Constitutional and tort

principles to sue based on a clearly fictional work.  Further, because the pleading

defects in the Complaint cannot be remedied, the Complaint should be dismissed with prejudice.

Dated: March 17, 2014                    Respectfully submitted,

**K&L GATES LLP, and KATTEN
MUCHIN ROSENMAN LLP**


By: _s/Mark D. Marino_____
Mark D. Marino
K&L Gates LLP
One Newark Center, 10th Floor
Newark, New Jersey 07102
P: (973) 848-4000
F: (973) 848-4001
mark.marino@klgates.com
*Attorneys for Defendants
RELATIVITY MEDIA, LLC, LLC; SCOTT
COOPER; BRAD INGLESBY; APPIAN
WAY, LLC; ENERGY ENTERTAINMENT,
INC.; SCOTT FREE PRODUCTIONS; and
RED GRANITE PICTURES, INC.*