NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILBUR C. DEGROAT, III, ARLITTA DEGROAT, LEON DEGROAT, DIANE DEGROAT, PIA DEGROAT DENNISON, MARIE DEGROAT MANN, RODNEY VAN DUNK, EUNICE DEGROAT, GILBERT DEGROAT, ROSEMARIE MANN, AMANDA MANN, DAWN MANN, SANTANA PETERSON, JAZMINE PETERSON, RACHAEL MANN, DANIEL W. DENNISON, JR. and JON VAN DUNK, <br><br>　　　　　　　　　　Plaintiffs,<br>　　　　v.<br><br>SCOTT COOPER; BRAD INGLESBY; RELATIVITY MEDIA, LLC, a California limited liability company; APPIAN WAY, LLC, a California limited liability company; ENERGY ENTERTAINMENT, INC., a California corporation; SCOTT FREE PRODUCTIONS, INC., a California corporation; RED GRANITE PICTURES, INC., a California corporation; and JOHN DOES 1 to 5,<br><br>　　　　　　　　　　Defendants. | OPINION<br><br>Civ. No. 2:13-07779 (WHW) |

**Walls, Senior District Judge**

Defendants Relativity Media, LLC, Scott Cooper, Brad Inglesby, Appian Way, LLC, Energy Entertainment, Inc., Scott Free Productions, Inc., and Red Granite Pictures, Inc. (collectively, "Defendants") move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Under Federal Rule of Civil Procedure 78(b), this motion, decided without oral argument, is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are members of the Ramapough Lunaape Nation (as a people, the "Ramapoughs"), a Native American ethnic group recognized by both New York and New Jersey. Compl. ¶ 28 (ECF No. 1). All but one of the Plaintiffs are residents and citizens of New York or

**NOT FOR PUBLICATION**

New Jersey. *Id.* ¶¶ 1-14. The remaining plaintiff is a resident and citizen of Tennessee. *Id.* ¶ 15. Defendants are all residents and citizens of California. *Id.* ¶¶ 16-23. Defendants created, produced, and distributed the motion picture *Out of the Furnace* (the "Picture"), released on or about December 6, 2013. *Id.* ¶ 34. Plaintiffs allege that Defendants, through their involvement with the Picture, have defamed them and placed them in a false light, and have negligently inflicted emotional distress upon them. *See id.* ¶¶ 52-56.

Plaintiffs state that many of the Ramapoughs live in certain communities in New York and New Jersey surrounding the Ramapo Mountains, and that it is common knowledge that the Ramapoughs live in the Ramapo Mountains in New Jersey. *Id.* ¶¶ 29, 39. They assert that the Ramapoughs have been historically discriminated against, and have been referred to with the derogatory label "Jackson Whites" and been regarded as "inbred." *Id.* ¶¶ 30-31. Plaintiffs contend that DeGroat and Van Dunk are well known and common surnames of the Ramapoughs, and have been for about 200 years. *Id.* ¶ 33. Many of the Plaintiffs' names include DeGroat or Van Dunk as surnames or middle names. *See id.* ¶¶ 1-15.

Plaintiffs present the Picture as follows:

> The Furnace movie revolves around the efforts of its protagonist . . . to keep his younger brother on a straight path; but the young man becomes involved in an underground bare-knuckle fight ring leading to his murder by a violent and evil character, Harlan De Groat, who is the chief of a gang of "inbreds" living in the Ramapo Mountains in New Jersey. Harlan DeGroat . . . is the head of a criminal gang that is identified as the Jackson Whites; which gang is described as a community of "inbreds" that inhabits the Ramapo Mountains in New Jersey. Another gang member is identified as Dwight Van Dunk. The community is depicted as lawless, drug addicted, impoverished and violent; and the members appear to be of some sort of racially mixed heritage. After his brother disappears, the movie follows the protagonist's efforts to identify and locate the killer . . . .

**NOT FOR PUBLICATION**

*Id.* ¶ 35.[1] Plaintiffs allege that other characters in the Picture make various statements concerning Harlan DeGroat and "his gang." *Id.* ¶¶ 36-38. Specifically, one character says they are "inbred mountain folk from Jersey," and later calls them "these inbreds." *Id.* ¶ 36. Another character says that "up in the Ramapos they got fights." *Id.* ¶ 37. And a different character says "the people up in those hills" have a "whole nother world up there" with "their own breed of justice," and that "generations upon generations of those people never come down from that mountain." *Id.* ¶ 38.

Plaintiffs contend that Harlan DeGroat and "his gang" are easily recognizable as Ramapoughs, and that the Picture depicts them travelling on ATVs (which Plaintiffs state are a common means of transportation by Ramapoughs). *Id.* ¶¶ 41-42. Plaintiffs allege that, like Harlan DeGroat and "his gang," Plaintiffs themselves are easily recognizable – at least to residents of the border communities in New York and New Jersey and to the friends and business associates of Plaintiffs – as members of the violent, criminal group portrayed. *Id.* ¶ 42. Plaintiffs also assert that Defendant Cooper, one of the writers of the Picture, stated in an interview that Harlan DeGroat was based on "someone 'who has been in [his] family's life,'" and that the actor who portrays Harlan DeGroat was instructed to "do research 'about people in that area of the country.'" *Id.* ¶¶ 49-51. Plaintiffs contend that "[t]he connection between the ethnic slur of 'Jackson Whites,' with the location of the Ramapo Mountains of New Jersey, with a Bergen County Police patrol car, with the surnames 'DeGroat' and 'Van Dunk'" is specific to them. *Id.* ¶ 48.

Plaintiffs claim that the Picture put them "in a false light and defamed them by . . . setting the scene in the Ramapough Mountains of New Jersey, by referring to the criminal gang and/or

---

[1] Defendants deny that the term "Jackson Whites" appears anywhere in the Picture and state that the surname of Dwight Van Dunk (Van Dunk) is never stated in the Picture but appears only in the written credits at the end of it. Defs.' Br. in Support of Mot. to Dismiss ("Defs.' Br.") at 6 n.1 (ECF No. 14-1). As Defendants have not submitted the Picture to the Court to support their contentions, the Court accepts Plaintiffs' allegations as true for purposes of this motion.

3

the community as Jackson Whites and by using the DeGroat and Van Dunk surnames for the principal villains," which collectively "ma[de] for a ready association between these Plaintiffs and the movie." *Id.* ¶ 52. Plaintiffs also claim that "Defendants were careless in using the Plaintiffs' and their community's offensive and pejorative nickname and their geographical location and their surnames in conjunction," and that Plaintiffs have suffered and continue to suffer "mental anguish and emotional distress" as a result of the Picture. *Id.* ¶¶ 54, 56.

Defendants filed their motion to dismiss on March 17, 2014. ECF No. 14. Defendants argue that Plaintiffs have failed to state a claim for defamation or false light under both common law and the First Amendment to the United States Constitution. *See* Defs.' Br. at 10-24. Defendants also contend that dismissal of the false light or defamation claim mandates dismissal of the claim for negligent infliction of emotional distress, *see id.* at 24-27, but that in any event Plaintiffs have failed to adequately plead that claim, *see id.* at 27-29. On April 14, 2014, Plaintiffs filed their opposition, ECF No. 19, and on April 28, 2014, Defendants filed a reply, ECF No. 20.

**STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**NOT FOR PUBLICATION**

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Thus, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## DISCUSSION

Defendants argue that Plaintiffs have failed to state a claim for defamation or false light under both common law and the First Amendment. *See* Defs.' Br. at 10-24. Defendants also contend that dismissal of the false light or defamation claim mandates dismissal of the claim for negligent infliction of emotional distress, *see id.* at 24-27, but that in any event Plaintiffs have failed to adequately plead that claim, *see id.* at 27-29. Plaintiffs oppose the motion, arguing that they have adequately pled their claims and that they are entitled to discover facts to support them. Pls.' Br. Opposing Mot. to Dismiss ("Pls.' Opp'n") at 4-7 (ECF No. 19).

### A. Defamation and False Light

The Third Circuit "has repeatedly noted that although a defamation suit has profound First Amendment implications, it is fundamentally a state cause of action. Accordingly, adjudicating such claims requires inquiries under both state and federal law." *McDowell v. Paiewonsky*, 769 F.2d 942, 945 (3d Cir. 1985) (citation omitted); *see also Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1082 (3d Cir. 1988) ("[A]lthough replete with First Amendment implications, a defamation suit fundamentally is a state cause of action." (citation and quotation marks omitted)). "In the first instance, the Court must determine whether the defendant has injured the plaintiff's

5

reputation under the applicable state law. If so, then the Court must ascertain whether the First Amendment nevertheless prohibits the imposition of liability." *McDowell*, 769 F.2d at 945.[2]

In this case, there are four states whose laws on defamation and false light might apply: New York, New Jersey, and Tennessee, where Plaintiffs reside; and California, where Defendants are based. Because the law of each of these states is the same with regard to an issue the Court finds dispositive, a choice of law analysis is unnecessary at this time.

Defendants argue that the defamation and false light claims should be dismissed "because [they] do[] not contain the required threshold allegations that the Picture makes (or can be understood to make) factual statements specifically about Plaintiffs as individuals." Defs.' Br. at 10. Defendants are correct.

The laws of all four states require that the alleged statement in a defamation case be "of and concerning" the specific plaintiffs complaining. In New Jersey, "the circumstances must show that the statements are 'of and concerning' plaintiff." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 768 (1989); *see also Durski v. Chaneles*, 175 N.J. Super. 418, 420 (App. Div. 1980) ("An indispensable prerequisite to an action for defamation is that the defamatory statements must be of and concerning the complaining party." (citation omitted)). Likewise, in New York, "[t]o state a claim for defamation, a plaintiff must establish that the [challenged] matter

---

[2] It is not entirely clear if the Circuit meant this to be a procedural rule to be applied in every case, regardless of whether it is immediately apparent that the imposition of liability would be unconstitutional. In cases such as this one, where there are several states whose laws may be applicable, raising potentially complex choice of law issues, it may be a better approach to address an immediately apparent and dispositive constitutional issue without delving into an unwieldy state law analysis that will ultimately be irrelevant to the outcome. This appears to be the approach taken in the Second Circuit, for example. *See, e.g.*, *Diaz v. NBC Universal, Inc.*, 337 F. App'x 94, 96 (2d Cir. 2009) ("As a threshold, and constitutional, matter, a plaintiff alleging defamation must demonstrate that the allegedly defamatory statement was 'of and concerning' him or her."). Nonetheless, this Court will follow the Third Circuit's instruction and proceed in the recommended order.

is published of and concerning the plaintiff." *Gilman v. Spitzer*, 538 F. App'x 45, 47 (2d Cir. 2013) (citation and internal quotation marks omitted). "The plaintiff must show that 'the allegedly defamatory comment refer[s] to the plaintiff.'" *Id.* (quoting *Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786, 788 (1981)).

> California law is the same, with the California Supreme Court explaining:
>
> The "of and concerning" or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt. To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society.

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044 (1986).[3] Tennessee, the fourth state whose law might apply, has the same "'of and concerning' requirement," which "confines actionable defamation to statements made against an ascertained or ascertainable person, and that person must be the plaintiff." *Steele v. Ritz*, No. W200802125COAR3CV, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009) (citation and quotation marks omitted). "A plaintiff may not support a claim for defamation based on an alleged defamatory statement made 'of and concerning' a third party." *Id.* (citation omitted).

The same "of and concerning" requirement applies to causes of action for false light. New Jersey draws on the Restatement (Second) of Torts (1977) for this requirement. *See Romaine v. Kallinger*, 109 N.J. 282, 297 (1988) ("'The right protected by the action for invasion of privacy is a personal right, . . . and it cannot be maintained by other persons such as members of the individual's family." (quoting Restatement § 652I cmt. a)); *see also id.* at 296 ("Not even the most

---

[3] The California Supreme Court found this to be a requirement of the federal constitution. *See id.* at 1042 ("In defamation actions the First Amendment also requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way.").

strained reading of the sentence reveals a meaning that in any way concerns the plaintiffs . . . or places them in a false or meretricious light."). Tennessee similarly looks to the Restatement. *W. v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn. 2001) ("[T]his Court adopts Section 652I of the *Restatement (Second) of Torts* (1977) which recognizes that the right to privacy is a personal right. As such, the right cannot attach to corporations or other business entities, may not be assigned to another, nor may it be asserted by a member of the individual's family . . . . Therefore, only those persons who have been placed in a false light may recover for invasion of their privacy." (citations omitted)). California imposes the same "of and concerning" requirement on all "injurious falsehood" claims. *Blatty*, 42 Cal. 3d at 1043 ("The fundamental reason that the various limitations rooted in the First Amendment are applicable to all injurious falsehood claims and not solely to those labeled 'defamation' is plain: although such limitations happen to have arisen in defamation actions, they do not concern matters peculiar to such actions but broadly protect free-expression and free-press values."). Finally, New York does not recognize false light as a separate common law cause of action. *See Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 123 (1993) (explaining that false light is one of three "privacy torts," and that New York has "no common law of privacy," but privacy is instead governed by a statutory scheme); *Cohen v. Hallmark Cards, Inc.*, 45 N.Y.2d 493, 497 n.2 (1978) ("In New York, there exists no so-called common-law right to privacy.").

    It is plain that the "of and concerning" requirement is not met in this case. Plaintiffs plead only that some of them share the same surname, but not first name, as two of the characters in the movie. They also contend that they are Ramapoughs, as are the characters in the movie, and that many of them live in the same region as the Ramapoughs. These allegations do not suffice to show that the alleged defamatory statements are "of and concerning" these Plaintiffs. In fact, Plaintiffs

8

**NOT FOR PUBLICATION**

concede in their brief that the statements they complain of do not refer to them: "It is acknowledged that these Plaintiffs are not, specifically, characters in the movie . . . ." Pls.' Opp'n at 6.

Acknowledging this defect in the complaint, Plaintiffs argue that "[t]he real issue here is whether Plaintiffs can really be associated with the movie's characters." Pls.' Opp'n at 6. They argue that "an individual member of a group that is placed in a false light can maintain a claim if 'the group or class is so small that the publicity can reasonably be understood as referring to that individual." *Id.* (quoting *Mich. United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 904 (W.D. Mich. 1980)). Under what is known as the "group libel doctrine," "a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group, unless the plaintiff can show that the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff." *Diaz v. NBC Universal, Inc.*, 337 F. App'x 94, 96 (2d Cir. 2009). The exception to the group libel doctrine that Plaintiffs cite is based on the idea that where the group is small, it might be reasonable to conclude that a statement made concerning the group concerns each member of that group *as an individual*.

Unfortunately for Plaintiffs, they have admitted that they are *not* portrayed in the movie. Even were their pleadings sufficient to support the exception to the group libel doctrine, Plaintiffs' admission that they, in fact, are not portrayed, with the logical corollary that the statements do not

concern them, makes the exception to the group libel theory inapplicable as a matter of law. This is because they have conceded that what the exception is meant to establish is in fact not the case.[4]

Because Plaintiffs' admission means that they cannot satisfy the "of and concerning" requirements of any of the potentially applicable state's defamation or false light causes of action, the Court grants Defendants' motion to dismiss count one for defamation and false light. And because this admission forecloses the possibility of a remedial amendment, the dismissal is with prejudice.[5]

### B. Negligent Infliction of Emotional Distress

Defendants argue that the claim for negligent infliction of emotional distress should be dismissed "because it is based on the same conduct as Plaintiffs' defamation claim," and when "additional tort claims are aimed at the same speech that is the basis of a defamation claim, courts should not entertain the additional claims under a different label." Defs.' Br. at 24. Plaintiffs do not respond to this argument. Defendants are correct.

New York, New Jersey, and California all follow this rule. *See G.D. v. Kenny*, 205 N.J. 275, 307 (2011) ("The intentional- and negligent-infliction-of-emotional-distress claims also fail

---

[4] The Court adds that the pleadings would be insufficient to support such an exception in any event. There are no allegations concerning the number of Ramapoughs, nor even the number of Ramapoughs with the surnames DeGroat or Van Dunk. Plaintiffs' allegation that the surnames are common undermines the applicability of this exception. The Court would find it surprising if the Ramapoughs, recognized by the states of New York and New Jersey and living in several communities in each state, could qualify as "small" under the exception to the group libel doctrine. *See* Restatement (Second) of Torts § 564A cmt. b. ("It is not possible to set definite limits as to the size of the group or class, but the cases in which recovery has been allowed usually have involved numbers of 25 or fewer.").

[5] Even if the "of and concerning" requirement were not part of the common law of each state involved, the requirement is constitutional. *See Diaz*, 337 F. App'x at 96 ("As a threshold, and constitutional, matter, a plaintiff alleging defamation must demonstrate that the allegedly defamatory statement was "of and concerning" him or her."); *Blatty*, 42 Cal. 3d at 1042 ("In defamation actions the First Amendment also requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way.").

**NOT FOR PUBLICATION**

because those torts are predicated on the same conduct alleged in the defamation claim."); *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 432, 561 A.2d 1122, 1129 (1989) ("There is, in other words, a certain symmetry or parallel between claims of emotional distress and defamation that calls for consistent results."); *Butler v. Delaware Otsego Corp.*, 610 N.Y.S.2d 664, 666 (App. Div. 3rd Dep't 1994) ("The facts alleged by plaintiff are, in essence, inseparable from the tort of defamation and, as such, plaintiff is relegated to any remedy that would have been available on that basis."); *Ghaly v. Mardiros*, 611 N.Y.S.2d 582, 583 (App. Div. 2nd Dep't 1994) ("The cause of action sounding in intentional infliction of emotional distress based upon those same statements in the third-party complaint were also properly dismissed as duplicative."); *Flynn v. Higham*, 197 Cal. Rptr. 145, 147 (Ct. App. 1983) ("We next turn to the issue of whether an independent cause of action can be maintained for the intentional infliction of emotional distress based on the very same acts which were insufficient to support a cause of action for defamation. We hold that it cannot.").

The Court's research has not revealed cases in which Tennessee courts adhere to this rule. It makes no difference: the rule is also constitutional. *See Shay v. Walters*, 702 F.3d 76, 83 (1st Cir. 2012) ("The Supreme Court has made it pellucid that a failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress. . . . Such an outcome is required by the Constitution." (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988))); *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1034 (2d Cir. 1997) ("We agree with the district court that the Chaikens cannot avoid the obstacles involved in a defamation claim by simply relabeling it as a claim for intentional infliction of emotional distress." (citing *Falwell*, 485 U.S. at 56)). As the Court has alternatively found that the defamation and false light claims could not survive as a matter of federal constitutional law, *see, supra*, note 5, the negligent infliction of

**NOT FOR PUBLICATION**

emotional distress claim premised on the same facts must also be dismissed. And because the dismissal of count one was with prejudice, dismissal of count two – which is dependent on count one – is also with prejudice.

## CONCLUSION

The Court grants Defendants' motion to dismiss. The complaint is dismissed in its entirety, with prejudice. An appropriate order follows.

Date: May 14, 2014

**/s/ William H. Walls**
United States Senior District Judge
